UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE SANDERS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:18-cv-01388-CDB (SS)<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR VOLUNTARY REMAND, AND REMANDING TO THE COMMISSIONER FOR FURTHER PROCEEDINGS<br><br>(Docs. 21, 30) |

Plaintiff Ronnie Sanders ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the Administrative Record ("AR") and the parties' briefs, including Plaintiff's opening brief in which Plaintiff requests the Court reverse the Commissioner's decision and award benefits starting May 1, 1997, or, alternatively, remand for further proceedings (Doc. 21); Defendant's Motion for Voluntary Remand and Opposition to Plaintiff's Brief (Doc. 30); and Plaintiff's Reply in Support of Opening Brief and Opposition to the Scope of Remand (Doc. 31).[1]

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 13).

Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.

I.     BACKGROUND

On January 4, 1990, an administrative law judge ("ALJ") found Plaintiff disabled as of March 6, 1988, and awarded benefits to Plaintiff. (AR 157). After periodic review, it was determined Plaintiff was no longer disabled as of February 1997 ("Cessation Decision"). (AR 436). The Cessation Decision was upheld on reconsideration, and Plaintiff requested a hearing before an ALJ. (AR 218). On October 26, 1999, ALJ Michael J. Haubner issued his decision finding Plaintiff's "disability ceased on February 28, 1997." (AR 225-26). The Appeals Council denied Plaintiff's request for review on October 8, 2002. (AR 228). Plaintiff subsequently filed suit in this Court seeking judicial review of ALJ Haubner's decision. (*See* AR 230). On March 29, 2004, the Court remanded the case to the Commissioner for further proceedings consistent with 42 U.S.C. § 405(g). (AR 231-43).

While proceedings concerning the Cessation Decision were ongoing, Plaintiff filed subsequent disability applications on March 25, 2002. (*See* AR 266). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (*See id.*). ALJ William C. Thompson, Jr. held a hearing on October 10, 2003, where Plaintiff and a vocational expert ("VE") testified. (*See* AR 266, 311-48). On January 22, 2004, ALJ Thompson issued his decision denying Plaintiff's claim. (AR 266-274). The Appeals Council denied Plaintiff's request for review on November 14, 2005. (AR 291-93). Plaintiff again filed an action in this Court seeking judicial review of ALJ Thompson's decision. (AR 301-03). The Court found in favor of the Commissioner on November 16, 2006. (AR 349-65). The Ninth Circuit Court of Appeals affirmed the Court's decision because "substantial evidence support[ed] the ALJ's decision." *Sanders v. Astrue*, 295 F. App'x 156, 157 (9th Cir. 2008).

Proceedings concerning the Cessation Decision continued. ALJ Haubner held a video hearing on June 29, 2006. (*See* AR 369). In an undated decision, ALJ Haubner found Plaintiff's disability ended as of February 1, 1997. (AR 369-78). ALJ Haubner indicated the Appeals Council denied Plaintiff's request to consolidate the subsequent application with the cessation

1  proceedings such that ALJ Haubner did not have jurisdiction to consider documents related to the
2  subsequent application. (AR 369). Plaintiff sought review of ALJ Haubner's new decision by the
3  Appeals Council. However, "because the record was missing" and the "Appeals Council was
4  unable to locate or redevelop the completed record," the Appeals Council remanded the case to an
5  ALJ "to attempt to redevelop the record" and conduct another hearing.[2] (*See* AR 278).

6  On remand, ALJ James P. Berry held a hearing on July 27, 2010. (*See* AR 278, 287). In a
7  September 8, 2010 decision, ALJ Berry found Plaintiff's disability ended on February 1, 1997,
8  and Plaintiff had not become disabled again since that date. (AR 278-90). ALJ Berry noted that
9  because ALJ Thompson's decision, which had been affirmed by the Ninth Circuit, "considered
10 evidence dating from the date of the decision upholding the cessation, to wit, October 26, 1999,
11 [he] need not discuss evidence after that date." (AR 279). Plaintiff sought review by the Appeals
12 Council but, on review, the Appeals Council could not locate the reconstructed file and concluded
13 it had been destroyed on June 7, 2012. (AR 585). Accordingly, on August 30, 2013, the Appeals
14 Council vacated ALJ Berry's decision and remanded the case to an ALJ to again reconstruct the
15 record and conduct *de novo* proceedings. (AR 586).

16 ALJ John Heyer held a hearing on September 22, 2014. (*See* AR 64). On November 3,
17 2014, ALJ Heyer issued a decision finding Plaintiff's disability ended February 1, 1997, and
18 Plaintiff had not been disabled again since that date. (AR 64-75). Like ALJ Berry, ALJ Heyer
19 noted that "[b]ecause the decision on claimant's subsequent applications considered evidence
20 dated after the October 26, 1999 decision upholding claimant's cessation, [he] need not discuss
21 evidence after that date." (AR 65).

22 On November 13, 2015, the Appeals Council assumed jurisdiction over the proceedings
23 and remanded the case to the ALJ for further proceedings. (AR 78-79). The Appeals Council
24 explained that because ALJ Thompson's decision was affirmed by the Ninth Circuit, the Appeals
25 Council did not have jurisdiction to re-adjudicate Plaintiff's disability between October 26, 1999,
26 and January 22, 2004. (*Id.*). However, the ALJ was still required to determine whether Plaintiff

27

28 [2] Consistent with the theme of missing documents, the Appeals Council's remand order does not appear to be included in the record. The Court relies on the restatement of the order's contents by the subsequent ALJ.

3

had become disabled *after* the January 22, 2004 decision. (*Id.*). Thus, the Appeals Council instructed the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision for the period prior to March 1, 1997 and the period after January 22, 2004." (AR 79).

ALJ Nancy Lisewski held a hearing on August 22, 2016. (*See* AR 89). On January 23, 2017, ALJ Lisewski issued a partially favorable decision on Plaintiff's claims. (AR 89-108). ALJ Lisewski noted that ALJ Thompson's decision on Plaintiff's subsequent applications adjudicated Plaintiff's disability status from October 26, 1999 through the decision date of January 22, 2004. (AR 89). ALJ Lisewski found that from February 28, 1997 through October 26, 1999, Plaintiff was able to perform a significant number of jobs in the national economy such that Plaintiff was not disabled from February 28, 1997 through January 22, 2004. (AR 101-02). Concerning the period after ALJ Thompson's decision, ALJ Lisewski concluded Plaintiff was not disabled prior to October 7, 2010, but became disabled on that date. (AR 107-08).

Based on Plaintiff's written exceptions to ALJ Lisewski's decision, the Appeals Council assumed jurisdiction and entered a modified decision on Plaintiff's claims on August 8, 2018. (AR 114-18). After providing notice of its intention to the parties, the Appeals Council modified the date Plaintiff became disabled to April 21, 2006. (AR 114, 117). The Appeals Council adopted the finding that Plaintiff was not disabled from March 1, 1997 through October 25, 1999, or from January 23, 2004 through April 20, 2006. (*Id.*). Plaintiff sought review of the Appeals Council's decision in this Court by filing the current case. (ECF No. 1). Based on the parties' stipulation, on February 22, 2019, the Court remanded the case for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g). (ECF No. 8).

Following this Court's remand, the Appeals Council vacated its August 8, 2018 decision "only with respect to the periods between March 1, 1997, through October 25, 1999; and between January 23, 2004, through April 20, 2006." (AR 125-126). The Appeals Council remanded the case so that an ALJ could locate missing exhibits and reconstruct the record, conduct a hearing, and issue a new decision. (*Id.*). The Appeals Councils specifically advised that "[t]he new decision will address only the periods between March 1, 1997, through October 25, 1999; and

4

between January 23, 2004, through April 20, 2006." (*Id.*).

ALJ Mary P. Parnow held a hearing on June 22, 2021. (*See* AR 4). On October 17, 2022, ALJ Parnow issued her decision finding Plaintiff's disability ended on February 28, 1997, Plaintiff did not become disabled again through March 31, 1999, and Plaintiff was not disabled from January 23, 2004 through April 20, 2006. (AR 4-24). ALJ Parnow noted that ALJ Haubner's October 26, 1999 decision adjudicated disability only until February 28, 1997, rather than the date of the decision, and ALJ Thompson's decision adjudicated disability from October 26, 1999 through January 22, 2004. (AR 7). Following the conclusion of the administrative proceedings, the parties stipulated to the reopening of this action and the action was reopened on January 20, 2023. (ECF Nos. 9, 12).

## II.      LEGAL STANDARD

### A. Disability Review Process

The Commissioner has established a multi-step sequential analysis to determine whether a claimant's disability has ended. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement. *Compare* 20 C.F.R. §§ 404.1520 *and* 416.920 *with* §§ 404.1594(f) *and* 416.994(b)(5). A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Determination of whether a person's eligibility for disability benefits has ended involves an eight-step process under Title II and a seven-step process under Title XVI. 20 C.F.R. § 404.1594(f). The Title XVI process is identical to the Title II process, except for the consideration of substantial gainful activity at the beginning of the disability insurance process and not during the Title XVI process. These otherwise identical steps are broadly summarized as follows.

The first step addresses whether the claimant is engaging in substantial gainful activity.

20 C.F.R. §§ 404.1594(f)(1).  If not, step two determines whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1594(f)(2).  If the impairment does not equal a listed impairment, the third step addresses whether there has been medical improvement in the claimant's condition.  20 C.F.R. § 404.1594(f)(3).  Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled.  20 C.F.R. § 404.1594(b)(1).  If there has been medical improvement, at step four, a determination is made whether such improvement is related to the claimant's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity ("RFC").  20 C.F.R. § 404.1594(f)(4).  If the answer to step four is yes, the Commissioner skips to step six and inquires whether all the claimant's current impairments in combination are severe.

If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step five.  At step five, consideration is given to whether the case meets any of the special exceptions as to medical improvement for determining that disability has ceased.  20 C.F.R. § 404.1594(f)(5).  At step six, if medical improvement is shown to be related to the claimant's ability to work, a determination will be made to assess whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1594(f)(6).  If the answer to that inquiry is yes, at step seven the ALJ must determine whether the claimant can perform past relevant work.  20 C.F.R. § 404.1594(f)(7); *see* SSR 82-61, *available at* 1982 WL 31387.

Finally, at step eight, if the claimant cannot perform past relevant work, a limited burden of production shifts to the Commissioner to prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity.  20 C.F.R. § 404.1594(f)(8).  If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases.  *Id.*

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on the claimant. 20 C.F.R. § 416.994; *cf. Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The Commissioner must consider all evidence without regard to prior findings and there must be substantial evidence that medical improvement has occurred. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4). The Commissioner views the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4). If the analysis proceeds to step seven, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." *Cf. Bowen*, 482 U.S. at 146 n.5; *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination).

### B. Standard of Review

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Healy v. Astrue*, 379 F. App'x 643, 645 (9th Cir. 2010). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate

7

nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### III.   ISSUES AND ANALYSIS

Plaintiff argues ALJ Thompson had jurisdiction to adjudicate disability starting March 1, 1997, and because ALJ Parnow's decision "invades the period adjudicated by ALJ Thompson," it "de facto reopened that decision." (ECF No. 21 at 10).  Believing ALJ Thompson's decision was reopened, Plaintiff argues ALJ Parnow erred by not accounting for the RFC assessed by ALJ Thompson and failing to weigh the VE's testimony "that the limitations described by ALJ Thompson for the period over which that decision had jurisdiction, beginning March 1, 1997, that there were no jobs." (*Id.* at 11-16).  Accordingly, Plaintiff requests the Court reverse ALJ Parnow's decision and award benefits starting May 1, 1997, or, alternatively, remand for further proceedings.  (*Id.* at 18).

Significantly, "the Commissioner now agrees to find Plaintiff disabled for the period of January 23, 2004, to April 20, 2006"—the time between ALJ Thompson's decision and the date the Commissioner has already decided Plaintiff became disabled again.  (Doc. 30 at 2).  Further, the Commissioner "also agrees that remand is warranted" for an ALJ to "consider the psychiatric review technique and step 3 of the sequential evaluation for the period from February 28, 1997 through October 25, 1999; take any further action needed to complete the administrative record; and issue a new decision." (*Id.* at 6).  The Commissioner requests the Court deny Plaintiff's request for payment of benefits because "Plaintiff fails to establish he was presumptively disabled beginning May 1997." (*Id.* at 7).  Specifically, the Commissioner argues the VE testimony Plaintiff relies on "is not clear, nor conclusive" as to disability from 1997 to 1999 and ALJ Thompson's decision is not subject to reopening since it was affirmed by the Ninth Circuit.  (*Id.* at 8-9).  Thus, the Commissioner requests the Court remand the case pursuant to sentence four of 42 U.S.C. § 405(g) for the period from February 28, 1997 to October 25, 1999.  (*Id.* at 10).

In reply, Plaintiff clarifies his argument concerning how ALJ Thompson's decision was reopened.  Plaintiff asserts Social Security Ruling 92-2(6), applicable at the time of ALJ

1    Haubner's 1999 decision, "precluded agency adjudicators … from doing anything other than
2    decide the issue of disability as of the established cessation date." (ECF No. 31 at 2-3).  Thus,
3    because "ALJ Haubner did not adjudicate the question of disability between March 1, 1997,
4    through the date of decision, October 26, 1999," ALJ Thompson assumed jurisdiction over the
5    case as of March 1, 1997, such that when the Appeals Council made findings for the period
6    March 1997 to October 1999, it de facto reopened the ALJ Thompson decision.  (*Id.* at 3-4).

7    Because the Commissioner agrees to find Plaintiff disabled from January 23, 2004 to
8    April 20, 2006, and further agrees ALJ Parnow's decision should not stand as to the period from
9    March 1, 1997 to October 25, 1999, the primary issue remaining for the Court is whether remand
10   for further proceedings is warranted or whether Plaintiff is entitled to an award of benefits for, at
11   a minimum, the period from March 1, 1997 to October 25, 1999.

12   The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)
13   or to order immediate payment of benefits is within the discretion of the district court.  *Harman v.*
14   *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  "When a reviewing court reverses an administrative
15   agency determination, the proper course, except in rare circumstances, is to remand to the agency
16   for additional investigation or explanation."  *Miskey v. Kijakazi*, 33 F.4th 565, 575 (9th Cir. 2022)
17   (internal quotation marks omitted).  Remand for an award of benefits is only appropriate "where
18   no useful purpose would be served by further administrative proceedings and the record has been
19   thoroughly developed."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir.
20   2014).  Even in the "rare circumstances" where remand may be appropriate, a court retains
21   discretion to remand for additional evidence rather than award benefits.  *Id.* at 1101-02.

22   The Court agrees with the Commissioner that Plaintiff has not conclusively established he
23   was disabled as of March 1, 1997.  Plaintiff relies on the combination of the RFC assigned by
24   ALJ Thompson and VE testimony before ALJ Parnow.  ALJ Thompson determined:

> The claimant has the residual functional capacity to lift and/or carry
> 20 pounds occasionally and 10 pounds frequently; to stand and
> walk in combination for at least six hours in an eight-hour workday
> and to sit without limit when not required to stand or walk. The
> claimant is able to occasionally bend, stoop, and kneel but should
> avoid working at heights or around hazardous machinery. The

9

>claimant is limited to work involving simple instructions in one or two step processes. He is further restricted to work requiring only limited contact with supervisors, co-workers, and the public.

(AR 273). At the hearing before ALJ Parnow, Plaintiff's attorney asked the VE to assume a younger individual, limited to light work, "limited to no more than six hours of standing and walking in an eight-hour day," limited to simple repetitive one and two step instructions, and who could tolerate no more than occasional superficial contact with coworkers, supervisors, and the public. (AR 54). The VE asked for clarification regarding the standing and walking restriction and the attorney clarified the individual had "a maximum standing and walking capacity of six hours." (AR 55). After obtaining further clarification regarding the hypothetical, the VE responded:

> Typically, you see individuals in housekeeper, cleaners, also called janitors. That is reasoning of one, but they would need to be able to stand most of the day. That is why I am saying you are sticking to six hours period, then they wouldn't be able to work an eight-hour day. If I am understanding your hypothetical there would be no work.

(AR 55-56). ALJ Parnow gave the VE an opportunity to further explain her testimony and the VE expanded:

> I guess when I looked at the forms. Doctors, typically, fill it out. They will say they can stand six hours out of an eight-hour day and typically it is my understanding that they are also equating it to 15 minutes for a break and 30 to 60 minutes for a lunch. That is what it is trying to say. Is he asking me that they couldn't stand most of an eight-hour day to perform a job such as this? Housekeeper, janitor type job. That is my understanding of how he is posing the question. Then there would be no work. But if it is the way in which I have typically seen physicians fill out the form, how they are meaning it, I will interpret that they will be able to do the jobs such as housekeeper and cleaner.

(AR 56).

Even if the Court were to assume—which it does not—that ALJ Thompson's RFC should be applied to the period starting March 1, 1997, the VE's testimony does not conclusively establish that Plaintiff would be disabled. Notably, ALJ Thompson found claimant could stand and walk "for at *least* six hours of an eight-hour work day" while the hypothetical posed to the VE contemplated "*no more than* six hours of standing and walking." (*Compare* AR 273 *with* AR

10

54 (emphases added)).  The "at least" language of the RFC is inconsistent with the "no more than" language posed in the hypothetical such that it is unclear whether jobs would exist that Plaintiff could perform.  Further, the evidence Plaintiff cites to support that he could not stand and/or walk for more than six hours is similarly inconclusive.  Plaintiff points to evidence from Drs. Jing and Bobba to support his argument concerning his standing and walking limitations. (ECF No. 21 at 16).  However, while Dr. Jing completed a form indicating Plaintiff could "[s]tand and/or walk (*with normal breaks*) for a total of … *about* 6 hours in an 8-hour workday," the form completed by Dr. Bobba indicates no exertional limitations were established.  (*Compare* AR 179 (emphasis added) *with* AR 190).  Even if ALJ Thompson's RFC applies to the relevant period, factual questions remain as to whether Plaintiff would be able to perform work such that he is not disabled.  In these circumstances, remand for further proceedings rather than an award of benefits is appropriate.

Because remand is appropriate as to the period starting March 1, 1997, the Court declines to address whether the Appeals Council's order to consider the period from March 1, 1997 to October 25, 1999 amounted to a de facto reopening of ALJ Thompson's decision.  Rather, on remand, the Appeals Council and ALJ should specifically determine whether ALJ Thompson's decision adjudicated the period from March 1, 1997 to October 25, 1999; if so, determine whether the previous order to adjudicate that period reopened ALJ Thompson's entire decision; and, depending on the resolution of those issues, make any necessary conclusions regarding Plaintiff's disability status.

IV.     **CONCLUSION AND ORDER**

For the reasons stated above, the Court ORDERS as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 21) is GRANTED IN PART and DENIED IN PART;
2. Defendant's Cross-Motion for Summary Judgment (Doc. 16) is GRANTED;
3. The decision of the Commissioner is reversed, and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order; and

4. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Sanders and against Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration.

IT IS SO ORDERED.

Dated: **January 21, 2025**

_____
UNITED STATES MAGISTRATE JUDGE